In the matter of the estate of CHARLES A. WOOLSEY, deceased.

[Filed November 21st, 1904.]

Testator had standing to his credit on the books of a corporation a large sum as accumulations of surplus income, which was increased by dividends after his death. By his will he directed the payment of legacies and annuities, which, if paid, would necessitate the use of the fund. The

executors used part of the fund to pay the annuities without having fully paid the legacies, the fund used having been made by the will subject to the payment of the annuities if the other income from the estate was not sufficient, which appeared.—*Held,* that the payment of the annuities was not an improper use of the fund which rendered the executors as accountants personally liable therefor, the annuitants and legatees being, with one exception, the same persons.

On appeal from the orphans court of Hudson county.

*Messrs. Carrick & Wortendyke,* for Frank Woolsey.

*Messrs. Northrop & Griffiths,* for James P. Northrop, the appellant.

*Messrs. Crouse & Perkins,* for the respondents.

BERGEN, VICE-ORDINARY.

The appeal in this case challenges the correctness of a decree of the orphans court of the county of Hudson, which adjudges the appellants, who are the accountants, personally liable for over $27,000 which it is admitted never came into their hands, and also refuses credit to the accountants for other items, which will be hereinafter particularly mentioned and considered. The record also shows a second appeal from a decree in the same court, requiring the accountants to give a bond in the sum of $30,000 to the ordinary of the state, conditioned for the faithful performance by them of their duties as executors. As both appeals grow out of the same subject-matter, they will be considered and disposed of together.

Charles A. Woolsey died July 4th, 1895, leaving a last will and testament, of which Frank Woolsey, Robert A. Simpson and James P. Northrop were appointed executors. The will was admitted to probate and the executors named duly qualified and took upon themselves the burden of executing the duties of their office.

The bulk of the testator's estate was invested in the capital stock of the C. A. Woolsey Paint and Color Company, in a credit to him on the books of the company, and in two life

insurance policies. He was the holder of nearly the whole of the capital stock of the company, and it was to all intents and purposes his private business, conducted by him under a corporate name. The executor Simpson is dead, and the account is filed by the appellants as surviving executors.

The will directed the payment of two legacies—one of $5,000 to his sister, Mary E. Newell, who has filed no exceptions, and another of $10,000 to his daughter-in-law, Victoria M. Woolsey —and then gave the residue of his estate to his executors, to be held upon the following trusts: (1) To set apart $20,000 and pay the annual income therefrom to his daughter, Alice; (2) out of the income from the remaining portion of his estate, to pay to his daughter, Alice, $1,000; to his daughter-in-law, Mrs. Woolsey, $2,000 annually; (3) to apply not more than $1,000 a year toward the support and education of his grandson, Herbert. The testator then directed that, with the exception of the funds necessary to pay legacies and create the trust estates provided for, all surplus dividends, and all other moneys left by him at his death in the C. A. Woolsey Company, should remain therein as a surplus fund for the benefit of said business until the division of his estate, and that so far as practicable the amounts to be paid annually to his daughter and daughter-in-law, and for the benefit of his grandson, should be paid out of the income from his estate, other than the income derived from the company, or his accumulations remaining therein, and that only so much should be taken from the company as might be necessary to make up any deficiency, and that all the surplus accruing should remain in the business as working capital, but that any such deficiency should be drawn "from the accumulation of surplus income left by me or my executors in said company." The testator further directed that during the minority of his grandson the shares of stock owned by him in the paint company should not be disposed of, but held by the trustees as a part of his estate, and then provided that his executors and trustees should not be held responsible for any diminution in his estate by reason of continuing his investment in and holding the stock of the company as a portion of their trust property and of his estate.

It thus appears that with the exception of the two legacies to the daughter and daughter-in-law the whole of the testator's estate was placed at the risk of the business venture he had established, for it abundantly appears that the trust of $20,000 in favor of the daughter could not be established as a distinct fund without selling the stock of the company, a proceeding he had forbidden, and in continuing the investment of trust funds in this company the trustees were indemnified against loss.

The questions presented on this appeal grow out of the method of accounting, and, it is charged, negligent conduct on the part of the accountants. Many questions were discussed on the argument outside of the matters appealed from, but in determining this matter I must be bound by the record and limit myself to the alleged errors appealed from.

The accountants having filed their account in the orphans court, showing a balance in their hands of $5,986.85, numerous exceptions were filed, and the orphans court directed an account to be taken by a master, who reported that the accountants should be charged with $27,016.85 more than was shown by the account of the executors to be the balance. The account, as reported, was approved by the orphans court by the decree which is now questioned, for the following reasons—first, because it sustained an exception to an item on the discharging side of the account amounting to $507.35. The testimony shows that before the executors were in funds, pressing bills for this amount against the estate were paid by the paint company, at the request of the executors, and as soon as any money came to the executors' hands it was repaid. The allowance should have been asked for only on showing to whom the different payments making up this amount were made, rather than in the manner adopted, but as it was admitted that this sum represented items of expenditure on behalf of the estate it would be a proper credit, unless some other valid objection is presented.

The master disallows this item, giving as reasons therefor— first, that because the company was then indebted to the estate the executors should not have refunded the money. In adopting this theory I think the orphans court fell into an error, and I do not agree with the conclusion reached. To me, the evidence

37

shows that this money was advanced to aid the executors, with the understanding that it should be returned, and that it had no connection with the indebtedness of the company to the testator, for that indebtedness was a fund which, except for certain purposes, the testator did not want disturbed. The second reason given was that the accountants had not charged themselves with having received this money from the company, and therefore they were not entitled to a credit when they repaid it. This reason is without the slightest merit, for if the accountants had charged themselves with receiving the money from the company, and taken a credit when they repaid it, they would stand just where they did when they started, and would have had no credit for the money paid the creditors. They have charged themselves with all money received by them as executors from decedent's estate, from which the payment was made. The accountants are entitled to a credit for this item.

The second, third and fourth grounds of appeal all relate to credits asked for and disallowed, and as they are of the same nature will be considered together. In addition to his holdings of the capital stock, the testator had, at the time of his death, standing to his credit on the books of the company, $14,246.48, which I find were "accumulations of surplus income," left by the testator in the company. Shortly after the testator's death two dividends were declared on the capital stock and credited to the same account, amounting to $9,568.07, making the total amount of accumulations and surplus $23,814.55. The executors drew from this fund, to pay the annuities provided for in the will, all but $5,492.26, which last amount stood to the credit of the account of accumulations and surplus, when the company was declared insolvent. Of this, $2,336.52 has been received as dividends from the assets of the company, with the prospect of future dividends, estimated to amount, together with the payment made, to sixty per cent. of the claim. From the fund above mentioned and other property of the estate the trustees have paid on account of the annuities directed to be paid by the will, as follows: To Victoria M. Woolsey, $14,832.82; to Alice Woolsey, $7,499.72; to the guardian of the grandson, $4,450.00, a total of $26,831.54, for which payments allowance was prayed. The orphans court

disallowed all these items, and by its decree makes the accountants personally liable for the whole sum. The master justifies this conclusion which was adopted by the orphans court upon the theory that all of the accumulations left by the testator were a part of the *corpus* of the estate, and that in using it to pay annuities an improper diversion was made, rendering the accountants liable for it. This conclusion is manifestly erroneous. There is not the slightest justification for the result reached, for this particular fund was, by the testator's will, made subject to these very payments, if the other income from the estate was not sufficient; that it was insufficient clearly appears from the record. It is insisted that a portion of this fund was required to provide for the two legacies, amounting to $15,000. That may be true to a certain extent, but $4,000 has been paid and about $6,000 is in hand for that purpose, so that, at best, only $5,000 should have been taken from the fund for that purpose, and if that had been done, certainly the residue of this sum, amounting to nearly $21,000, was properly to be applied to the payment of these annuities; and to say, as the orphans court has said, that these accountants should be liable personally for that large sum paid to the persons entitled to it out of the fund provided by the testator for that purpose, is manifestly incorrect.

. In my judgment, the error of these accountants, if any, is confined to their neglect in not providing for the payment of the legacies at the end of the year after the testator's death. All of the residue of the estate has been administered according to the will of the testator. If it has been lost through the failure of the company, that was a risk the testator directed them to take, declaring that they should be protected in so doing.

Whether these accountants were negligent in not providing for these legacies can only be settled when that question is raised in the proper court. The orphans court has no jurisdiction; the appropriate remedy is by a bill in equity. *Suydam* v. *Basledo,* *40 N. J. Eq.* (*13 Stew.*) *433; Duncan* v. *Davison, Executor,* *40 N. J. Eq.* (*13 Stew.*) *535.* The persons entitled to the legacies are the same, with one exception—that of the grandson—as those to whom the annuities were paid. They have received, in

one form or another, all of the estate for which the accountants are liable, with the possible exception of a balance due on the surplus account lost through the insolvency of the company. If they have had as annuities money that should have been paid to them as legacies, it can be adjusted when the question of how far the executors have neglected their duty in not providing for the legacies is before the court.

It should also be borne in mind that it is not alleged that these accountants have not charged themselves with all the money that came to their hands. Every dollar is accounted for, and the principal contest is over the question whether they had the right to pay annuities from the surplus fund. In my judgment, they had the right to use this surplus fund toward the payment of these annuities, at least so far as the payment of the legacies would permit.

The account which by the decree of the orphans court is approved is radically defective, and the decree should be reversed.

The accountants also appeal from a decree of the same court which adjudges that the accountants, as executors, be required to give a bond to the ordinary, in the sum of $30,000, for the faithful performance of their duties as executors. As it nowhere appears that the financial condition of these executors, since they were appointed by the testator, has changed, nor that they have not accounted for all the money that has come to their hands, I can find no legal justification for this decree. Even if the orphans court were correct in requiring a bond, the amount at which it has been fixed is excessive and beyond all reason. In my judgment, the commands of the testator have been carried out in every particular the condition of the estate permitted, with the one exception of paying over the legacies of $15,000. Of this, $4,000 has already been paid and the executors have in hand $6,000 to apply toward the satisfaction thereof. What, if anything, remains due on the legacies, can only be ascertained upon an accounting to be had between the executors and the legatees.

The only other matter appealed from is the allowance of counsel fees to the exceptants. The allowance was a proper one,

under the circumstances, and the decree of the orphans court should be sustained in this particular.

The errors in the decree, set out in the answer of the respondents, and from which they appeal, have been considered, and as to them the decree below will be affirmed.

The decree of the orphans court should be reversed as to the matters set forth in the petition of appeal of the appellants, other than the objection to the allowance of counsel fees, and I will so advise.